```
UNITED STATES DISTRICT COURT
  NORTHERN DISTRICT OF ILLINOIS
        EASTERN DIVISION
```

| | | |
|---|---|---|
| ALFREDO HUERTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VILLAGE OF CAROL STREAM, | ) | 09 C 1492 |
| OFFICER CAMILLO INCROCCI, | ) | |
| OFFICER PETER SPIZZIRI, | ) | |
| OFFICER BRIAN COOPER, | ) | |
| VILLAGE OF GLENDALE HEIGHTS, | ) | |
| UNKNOWN GLENDALE HEIGHTS | ) | |
| POLICE OFFICER, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Camillo Incrocci, Peter Spizziri, and Brian Cooper[1] for summary judgment in their favor on Count I of the nine-count amended complaint of Plaintiff Alfredo Huerta. For the reasons set forth below, the motion is granted.

---

[1] Although the motion states that it is also brought on behalf of Defendant Village of Carol Stream, we granted a motion to dismiss Count I as to Carol Stream on August 27, 2009, so the motion for summary judgment in favor of that defendant is moot.

# BACKGROUND

On March 10, 2008, Incrocci, Spizziri, and Cooper (all police officers with Defendant Village of Carol Stream) arrived at Huerta's home in response to a report of domestic disturbance. According to the police report authored by Incrocci, the three officers first met Huerta in the parking lot outside his apartment building. During this initial encounter, Huerta and two others told the officers that a man named Ivan, who was in Huerta's apartment, had been violent with its occupants that night. Huerta told the officers that they should go inside and that he would let them into the apartment. He accompanied them into the building and through the front door, which his wife opened.

When Incrocci entered, he saw a door to one of two rooms in the back of the apartment close. He went to the door and attempted to open it, but it was locked. Incrocci then began knocking on the door and demanding that the occupants open it. At that point, Huerta approached Incrocci, grabbed his arm, and told him that he hadn't given permission for the officers to go into that part of the apartment. Incrocci extricated himself from Huerta's grip and instructed Huerta not to touch him. A woman then came out of one of the bedrooms and went into the other bedroom; when she did so Incrocci saw several children in the room she entered. Despite Incrocci's previous admonition, Huerta again took hold of Incrocci's arm. Incrocci pushed Huerta up against a wall and told him that he was under arrest.

Incrocci had difficulty placing Huerta under arrest because he refused to turn around or place his hands behind his back when Incrocci instructed him to do so and physically struggled with Incrocci and Spizziri. At some point after Incrocci initially told Huerta he was under arrest, Huerta hit Incrocci in the chest with his body, though no description of that event is included in the police report. Eventually, Huerta was taken into custody and charged with two counts of aggravated battery to a police officer and one count of resisting a peace officer.

Huerta filed the instant suit on March 9, 2009, and amended his complaint on June 16, 2009. The amended complaint consists of nine counts. The first count is a claim under 42 U.S.C. § 1983 for false arrest. In it, Huerta alleges that during the incident on March 10, 2008, the officers arrested him without probable cause to do so for crimes he did not commit, specifically aggravated battery to a police officer and resisting arrest.

On September 2, 2009, Huerta pled guilty in Illinois state court to a misdemeanor criminal charge of making contact of an insulting or provoking nature with Incrocci by shoving his body into Incrocci's chest. His attorney stipulated at the change of plea hearing that Incrocci would provide testimony consistent with the amended indictment,[2]

---

[2]The parties have not provided a copy of the amended indictment in Huerta's criminal case. However, based on the representations made in the transcript of the plea hearing, we will assume that the only contact described within it consisted of Huerta shoving his body into Incrocci's chest. Defs.' Stmt. of Facts, ¶ Exh. B, p. 2., ll. 12-17.

but Huerta refused to agree with any of the facts set forth by Incrocci that were not presented in the amended indictment. He was sentenced to one year of court supervision.

Though discovery had not yet closed in the instant case, on December 11, 2009, Incrocci, Spizziri, and Cooper moved for summary judgment in their favor on Count I of Huerta's complaint.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant in entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes

all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

A claim for liability under 42 U.S.C. § 1983 consists of two elements: 1) a deprivation of a right guaranteed by the laws or Constitution of the United States, and 2) a person or persons acting under color of state law causing said deprivation. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). As on-duty police officers, Incrocci, Spizziri, and Cooper were persons acting under color of state law; that portion of Huerta's claim is not at issue. Rather, the parties direct their arguments to whether Huerta was deprived of his Fourth Amendment right to be free from unreasonable seizure, i.e. arrested without probable cause that he was engaging in criminal behavior. *See id.* at 765. Probable cause is present if, at the time an officer made the decision to arrest, the facts and circumstances the officer knew were sufficient to lead a reasonable person to believe that the arrestee was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The officers contend that Huerta's guilty plea eliminates any argument that probable cause was not present when he was arrested and therefore entitles them to summary judgment on Count I. They rely upon the rule set forth in *Heck v. Humphrey*

that a § 1983 litigant cannot invalidate an otherwise valid criminal conviction or sentence through the civil tort proceeding. 512 U.S. 477, 487 (1994). According to the officers, Huerta "cannot argue that he was falsely arrested for his actions on March 10, 2008 in light of his guilty plea for the very same conduct." Defs.' Memo. in Supp. of Mtn. for Summ. Jgmt., at 2. However, as Huerta points out and supports by reference to Incrocci's police report, the conduct for which he was arrested was not the conduct to which he pled guilty and which forms the basis of his valid criminal conviction. The battery that Huerta admitted committing took place after Incrocci had already arrested him. It could not have been part of the facts and circumstances known to Incrocci at the time of Huerta's arrest such that it could have formed part of his decision that probable cause to arrest existed. *See Beck*, 379 U.S. at 91. Consequently, a conclusion that the original arrest ran afoul of the Fourth Amendment would not undermine the validity of Huerta's conviction for battering Incrocci after the arrest was made. Under the principles enunciated in *Heck* and reinforced by the Seventh Circuit in *VanGilder v. Baker*, a § 1983 plaintiff does not need to prove the absence of any valid conviction resulting from a run-in with police, only that no valid conviction that would be irreconcilable with his or her civil claims exists. 435 F.3d 689, 692 (7th Cir. 2006). Thus, the guilty plea in this particular case does not affect Huerta's ability to pursue a claim under § 1983 for false arrest.

However, that conclusion is not the end of the inquiry because, in defending against the instant motion, Huerta proffered the police report authored by Incrocci and referred to above. The contents of the report are germane to the question presented in the motion of whether there was probable cause to arrest Huerta. The report is admissible as evidence under Fed. R. Evid. 803(8) as a public record or report. It is not being used in a criminal case, and, in its material usage, it reflects Incrocci's own observations, which he can otherwise testify to or supply an affidavit for. It does not reflect or contain a lack of indicia of reliability, and though Huerta proffered it for a purpose other than to establish what occurred on March 10, 2008, he has made no arguments against its use in its entirety. Huerta's attempts to limit its usage are ineffectual. Consequently, we find that any such arguments are forfeited.

The Illinois Criminal Code defines the offense of aggravated battery as including intentionally making physical contact of an insulting or provoking nature with a person whom the offender knows to be a peace officer in order to prevent the officer from performing official duties. 720 ILCS 5/12-3, 5/12-4. The offense of resisting or obstructing a peace officer is committed if a person knowingly resists or obstructs the performance of any authorized act by a known peace officer. 720 ILCS 5/31-1. The contents of the police report describe Huerta as meeting Incrocci under circumstances such that he would have known that Incrocci was a police officer. Incrocci was performing his official duties of investigating an incident where the safety of several

people was potentially threatened. While Incrocci was carrying out his duties, Huerta twice grabbed his arm to prevent him from proceeding with the investigation. When Incrocci was attempting to arrest Huerta, Huerta refused to turn around or place his hands behind his back and instead struggled with Incrocci and Spizziri. From this description, a reasonable person would believe that Huerta was engaging in conduct that would constitute aggravated battery and resisting or obstructing a peace officer as defined in the Illinois Criminal Code. Huerta offers no evidence of a contrary account of the events of the night of March 10, 2008, by affidavit or other source. In the absence of a competing story, there is no issue of fact presented that would require resolution by a jury. Based on the contents of the police report, we conclude that probable cause existed for the arrest, making Incrocci's actions consistent with the Fourth Amendment and warranting summary judgment in favor of the officers on the § 1983 claim set forth in Count I of Huerta's amended complaint.

## CONCLUSION

Based on the foregoing analysis, the motion for summary judgment on Count I of the amended complaint [36] is granted

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: February 18, 2010